**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - FLINT**


**In the Matter of**:
Blessed USA, Inc.                                    Case No. 12-34928
                                                     Chapter 11
                                                     Hon.  Daniel S. Opperman

                 Debtor
_____/
                  Chapter 11



## SECOND AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT

### OF

### BLESSED USA, INC
### Dated: November 5, 2013






Prepared By:

THE LAW OFFICES OF DAVID W. BROWN, PLLC
David W. Brown (P58113)
Attorneys for Debtor
1820 N. Lapeer Road, Suite 2A
Lapeer, MI 48446
(810) 245-6082
dbrownatt@sbcglobal.net

1

# CHAPTER 11 REORGANIZATION FILING

On December 20, 2013 Blessed USA, Inc., Inc. (the "Debtor") filed a Petition under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code" or "Code") in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division ("the Court"), Bankruptcy Case No. 12-34928. The case was assigned to the Honorable Daniel Opperman.

Upon the filing of the Petition, Debtor became a "Debtor-in-Possession" as that term is defined in the Code. Debtor is represented by the Law Offices of David W. Brown, P.L.L.C. ("Debtor's attorney"). Furthermore, Debtor's case has not had an appointment of an Official unsecured Creditor's Committee.

# HISTORY AND DESCRIPTION OF DEBTOR

Debtor is a corporation as set forth in 11 U.S.C. §101(9). Debtor is taxed as a corporation for income tax purposes.

Debtor is a audio-visual installation and service company.

A.  Annual Revenue and Management

Debtor's estimated revenue is disclosed on Debtor's Forecasted Statements Monthly Income & Expenses attached as **Exhibit C**. No expenditures will be made which would impair the ability of the Debtor to meet its obligations under the Plan. . Blessed USA, Inc. is currently owned by Stanley Kalisek as sole shareholders. Stanley Kalisek has been self employed for 23 years as an electronic engineer, hospitality consultant. Mr. Kalisek does not draw any salary, compensation, draw or other remuneration, including fringe benefits from the Debtor. No compensation is planned for Stanley Kalisek during the duration of this Chapter 11 Plan of reorganization. Mr. Kalisek will remain in charge of the business.

**Debtor is reorganizing.**

B. <u>Insider Transactions (Transfers from Debtor to Insider)</u>

See legal relationships paragraph below.

C. <u>Legal Relationships</u>

Another organization, Kalmek, Inc.., owned by Stanley Kalisek and Frank Lemek, leased premises to the Debtor in a strip mall for approximately five (5) years. Up to the date of filing, Blessed USA, Inc. leased approximately fourteen thousand (14,000) square feet of the strip mall from Kalmek, Inc. and remained in good standing on its lease obligations until November 2102. Blessed USA, Inc. was paying $3150.00 in rent per month. Shortly thereafter, Blessed USA, Inc. filed a petition for Chapter 11 protection.

Other legal relationships exist between Blessed, USA, Inc. and its owners in that Stanley Kalisek and Frank Lemek operate, Stafra Hospitality, Inc. in approximately fifteen thousand (15,000) square feet of Kalmek. Stafra Hospitality, Inc. operates Encore Sports Grill & Events Center, a restaurant/bar and conference center. Encore Sports Grill & Events Center began operations approximately one year after Kalmek, Inc. was formed and the strip mall was purchased. Stafra Hospitality, Inc. made periodic cash disbursements to Kalmek, Inc. as its business operations allowed, but no set monthly rent was ever agreed to between the parties as it was assumed that Stafra Hospitality, Inc. would take at least a year or more upon its organization before it would reach the ability to generate a profit. Additionally, Stafra Hospitality, Inc. was formed and the restaurant and conference center occupied for the purposes of obtaining long term financing with which to satisfy the current lien holder, SJ financing. It was critical for Kalmek to occupy

3

fifty-one (51%) of the premises to obtain such financing. Both this arrangement and the occupation of Blessed USA, Inc. would constitute insider transactions.

A legal relationship exists between Debtor and a related company, Kalmek, Inc. in that the Debtor leased office space from Kalmek, Inc. for the previous year and a half. Kalmek, Inc. is 50% owned by Stanley Kalisek, the sole shareholder of Debtor.

On the financing referenced above with Kalmek, Inc. through SJ Financing, the Debtor, Kalmek, Inc., Stanley Kalisek and Frank Lemek, the personal guarantess for the individuals make all parties jointly and severly liable for the SJ Financing obligation.

A cause of action does exist against the Debtor by Kalmek, Inc. for unpaid rents. Debtor has relocated from the Kalmek, Inc. premises.


## FACTS AND FACTORS CAUSING THE CHAPTER 11

The main factor that facilitated the Chapter 11 bankruptcy filing was the Debtor's inability to sustain cash flows after a disastrous venture in the State of Texas. Debtor's sub-contractors secretly made agreements with Debtor's contractual clients and lured them away from his business.

## POST-PETITION EVENTS OF SIGNIFICANCE

Since the filing of the Chapter 11 petition, the following events and matters have occurred.

1. Debtor has paid post-petition creditors and creditors with allowed claims on a timely basis during the tenure of this case, duplicitous claims, and claims purporting to have a priority basis when they do not.

4

2. Debtor has filed Objections to the Claims of the tax claims, as said claims were based on forecasted returns by the Internal Revenue Service and the State of Michigan. Actual returns have been filed showing the true tax liability of the Debtor.

3. There are no secured creditors of Debtor and therefore are no cash collateral issues. There has been no post-petition financing undertaken by Debtor since the date of Debtor filing its prayer for relief. No adequate protection orders have been entered in this case and none are required.

A. Transfers Post Petition

There have been no post-petition transfers to pre-petition unsecured (general or priority) creditors during the course of the bankruptcy.

B. Litigation

Debtor is not currently engaged as a Plaintiff in any active litigation. There are no pending claims or causes of actions against insiders and no avoidance actions are planned.

## .**LIQUIDATION ANALYSIS**

Debtor's Liquidation Analysis is attached as **Exhibit A.**

Based upon the Liquidation Analysis set forth in **Exhibit A,** Debtor believes that liquidation would result in a substantially smaller distribution to every class of its creditors, aside from secured creditors and payment of administrative claimants, then the proposed treatment set forth in the Plan. Debtor believes that general unsecured claimants would not receive a distribution in a liquidating proceeding. The values placed thereon and summarized herein are the Debtor-in-Possession's best estimates of the current value of the property. These values might differ from values placed on the property at the time of filing of the Petition for Relief and

the schedules. In valuing the property listed in Debtor's liquidation analysis there is a risk that it could be overstated as the receivables listed in Debtor's case have not been paid and may be uncollectible. Further the motor vehicles listed n Debtor's schedules are depreciating assets. However, having taken there matters into account, there is little to no risk that Debtor has undervalued the assets listed in its liquidation analysis and therefore is providing a fair dividend to its creditors.

## ADMINISTRATIVE PRIORITY CLAIMS

Priority claims are those claims entitled to payment under the provisions of the Bankruptcy code as set forth in 11 U.S.C. §507.

At the time of the preparation of this Combined Plan and Disclosure Statement, it appeared that these claims will consist of the following:

| Entity | Amount | Priority Statutes |
|---|---|---|
| Law Offices of David W. Brown PLLC | $15,000.00 | 11 U.S.C. §507(a)(2) |

## SECURED CLAIMS

None.

## PRIORITY UNSECURED CLAIMS

The Internal Revenue Service has a priority unsecured debt in the amount of $116,902.79 for unpaid taxes.

The State of Michigan has filed a secured claim of 41,714.77, and a priority claim of $20,887.74.

## NON-PRIORITY UNSECURED DEBT

6

Non-Priority Unsecured Claims total approximately $227,921.87. Of the creditors listed in Debtor's case, no one other than the Debtor is liable for the debt. Specifically, there are no personal guaranties underlying any of the creditors of Debtor. A list of general unsecured creditors, the approximate amounts owing and payment amounts (total payment amounts and monthly payment amounts) are attached as **Exhibit B**.

## PLAN IMPLEMENTATION

A. <u>Financial</u>

The Debtor has attached as **Exhibit C**, hereto and made a part of its disclosure statement, its forecasted statements of income and expense, forecasted statements of cash flow, and forecasted statements of Plan payments for the years (or partial years) 2013, 2014, 2015, 2016, and 2017 which encompass the implementation of the Reorganization Plan. The financial projections are based and assume the successful implementation of the Plan. The average income for past years was analyzed and adjusted to reflect the activity that would occur without constraints encountered prior to bankruptcy. It should be noted that the prior space leased by the Debtor was almost $5000.00 more per month for the rental cost. This savings Debtor achieved by moving its base of operations will allow for the payments under the Plan to made to Debtor's creditors.

The projections assume a generally stable environment, retention of the existing contracts held by the Debtor and an increase in sales.

The liquidation analysis set forth in **Exhibit A** and previously outlined above, indicates that if the Debtor's assets were liquidated today, there would be insufficient

assets available to satisfy priority unsecured creditors or pay any dividend to general unsecured creditors.

B. Tax Ramifications

Debtor will qualify for Discharge of Indebtedness pursuant to Sec. 108 of the Internal Revenue Code. All unpaid debts of Debtor will not be considered cancellation of debt income and thus not taxable. If Debtor has any tax attributes such as net operating losses carry forward, tax credits, capital losses carry forward or book value in remaining fixed assets, these attributes will be reduced accordingly to the debts discharged.

C. Legal Requirements

## VOTING PROCEDURES

Under the Bankruptcy Code, the only classes entitle to vote to accept or reject a Plan are classes of claims, or equity interest, impaired under the Plan. Accordingly, classes of claims that are not impaired are not entitled to vote.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the Plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities <u>other</u> than s disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. §502 and Bankruptcy Rule 3018.

Voting on the Plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the Plan and Disclosure Statement, each holder of such a claim or interest should vote on the enclosed Ballot either to accept or to reject the Plan, and then return the Ballot by mail as indicated on the Ballot by the deadline established by the Court.

Any Ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted.

A Ballot that is not received by the deadline will not be counted.

If a Ballot is damaged, lost or missing, a replacement Ballot may be obtained by sending a written request to Debtor's attorney.

**The filing may be accomplished either in person or by mailing the Ballots to the address indicated on the Ballot which is to <u>Law Offices of David W. Brown, PLLC, 1820 N. Lapeer Road Suite 2A, Lapeer, MI 48446.</u>**

**The deadline to return Ballots on the Plan, as well as file objections to final approval of the disclosure statement and objections to confirmation of the Plan shall be set by the Court.**

<u>ACCEPTANCE</u>

The Bankruptcy Code ("Bankruptcy Code") defines acceptance of a Plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class that actually cast ballots. The Bankruptcy Code defines acceptance of a Plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If not creditor or interest holder in an impaired class votes, then that class has not accepted the Plan.

<u>CONFIRMATION</u>

11 U.S.C. Sec. 1129(a) establishes conditions for the confirmation of a Plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a Plan under 11 U.S.C. Sec. 1129(a) are these:

1. Each class of impaired creditors and interest must accept the Plan, as described in the Acceptance section above.

2. <u>Either</u> each holder of a claim or interest in a class must accept the Plan or the Plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

<u>MODIFICATION</u>

The Debtor reserves the right to modify or withdraw the Plan any time before confirmation.

<u>EFFECT OF CONFIRMATION</u>

If the Plan is confirmed by the Court:

1. Its terms are binding on the Debtors, all creditors and other parties in interest, regardless of whether they have accepted the Plan.

2. Except as provided in the Plan:

    (a) In the case of a <u>corporation</u> that is reorganizing and continuing business:

    (1) All claims will be discharged.

    (2) Creditors and shareholders will be prohibited from asserting their claims against the interest of the debtor or its assets.

    (3) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. Sec. 523.

## PLAN OF REORGANIZATION

NOW COMES Debtor herein, Blessed USA, Inc., and in accordance with the Bankruptcy Code, hereby proposes and files its Plan of Reorganization under Chapter 11 of the Bankruptcy Code as follows:

## ARTICLE I DEFINITIONS

Allowed Claim shall mean a Claim (a) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by F.R. Bankr. P. 3001-3005; (b) scheduled in the list of creditors prepared and filed with the Court pursuant to F.R. Bankr. P. 1007 and not listed as disputed, contingent or un-liquidated as to amount or simply for "Notice" purposes, in either case as to which no objection to the allowance thereof has been raised within any applicable period of limitation or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending; (c) a claim deemed allowed by order of the Court.

Allowed Interest shall mean an Interest, (a) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by F.R. Bankr. P. 3001-3005, or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to F.R. Bankr. P.

1007, and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been raised with any applicable period of limitation, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding is pending.

Claim shall have the meaning as set forth in 11 U.S.C. Sec 101 and include any right to payment, or right to an equitable remedy for beach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured.

Allowed Priority Claim shall mean the Allowed Claim of a creditor afforded priority status under 11 U.S.C. Sec. 507, which is not secured by a lien, security interest or other charge against property of the estate, or subject to set off pursuant to 11 U.S.C. Sec. 553. This definition shall specifically include tax claims given priority status and treatment.

Allowed Secured Claim shall mean an Allowed Claim secured by a properly perfect lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to set off under 11 U.S.C. Sec. 553, to the extent of the value (determine in accordance with 11 U.S.C. Sec. 502(a)) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such set off, as the case may be. Creditors of the Debtor that possess judgment liens that are wholly unsecured or do not possess allowed claims against Debtor's non-filing souse who assert purported secured claims against real property held as tenancy by the entireties are not within the

definition of Allowed Secured Claim; rather, such creditor, to the extent possessing an Allowed Claim, are within the definition of Allowed Unsecured Claim.

Allowed Unsecured Claim or Allowed General Unsecured Claims shall mean the Allowed Claim of a creditor for goods or services to Debtor before Debtor's filing this Chapter 11 case, which is not secured by lien, security interest or other charge against property of the estate, or subject to set off pursuant to 11 U.S.C. Sec. 553. This definition may include the deficiency portion of an under-secured Allowed Secured Claim. This definition shall not include tax claims given priority status and treatment.

Bankruptcy Code and/or Code shall mean the United States Bankruptcy Code, 11 U.S.C. Sec. 101 et.seq., and any amendments thereto.

Class shall mean any class into which Allowed Claims are classified.

Confirmation Date shall mean the date upon which the Order of Confirmation or the Alternative Plan is entered by the Court.

Court shall mean the United States Bankruptcy Court for the state and district, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari relating thereto.

Debtor shall mean Blessed USA, Inc.. as the Debtor-in-Possession in the Chapter 11 case.

Creditor shall mean any person or its assignee that holds a claim against the Debtor for debts, liabilities, or demand of whatever kind or character which arose prior to the Petition Date.

Effective Date means that this Plan shall be effective on the eleventh (11th) day after the date of the Order Confirming the Plan; provided, however, that no stay pending appeal of the Order of Confirmation has been granted. In the event such an appeal is filed and stay granted,

this Plan shall be effective as of the date the Order Confirmation becomes final and binding on all parties.

Final Order shall mean an order or judgment of the Court which has not been stayed and as to which order or judgment (or any revisions, modifications, or amendments thereof) the time to appeal or seek review or rehearing has expired.

Income shall mean gross income prior to the payment of any expenses or payments under the Plan. The financial statements filed by the Debtor will reflect current income and expenses.

Person or Persons shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

Petition Date shall mean the date on which Debtor filed a voluntary Chapter 11 Petition.

Plan shall mean this Chapter 11 Plan of Reorganization in its present form or as may hereafter amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

Pro Rata shall mean proportionately or according to a certain rate percentage or proportion based upon the whole of Allowed Claims in any given Class.

Reorganized Debtor shall mean Debtor after the Effective Date. Furthermore, to the extent the Debtor is referenced in a post-confirmation capacity, Debtor shall have the same meaning as the Reorganized Debtor.

Rules shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Eastern District of Michigan.

## ARTICLE II ADMINISTRATIVE CREDITORS

The administrative expenses of the Debtor's Chapter 11 case allowed pursuant to 11 U.S.C. Sec. 503(b) shall be paid in full on or before the Effective Date unless otherwise ordered by the Court, in cash, or upon other terms as may be agreed upon by the holder of such allowed expense or Allowed Claim and Debtor. Where required by the Code and upon the approval by the Court, Debtor shall pay all administrative expenses on a current basis. **These claims shall not be impaired.**

## ARTICLE III DESIGNATION OF CLAIMS

Classes shall be set forth in accordance with their priority in the Code.

Each priority creditor which has filed a valid priority claim shall be separately classified in accordance with 11 U.S.C. Sec. 507.

A. <u>NON-VOTING CLAIMANTS:</u>

<u>Administrative Claims Pursuant to 11 U.S.C. Sec. 507(a)(1)</u>. This class will consist of Debtor's attorney and the Office of U.S. Trustee for any remaining fees and costs. <u>Allowed Priority Claims</u>. All claims entitled to priority under 11 U.S.C. Sec. 507.

B. <u>VOTING CLASSES</u>:

<u>Voting Class I—Allowed General Unsecured Claims</u>. All allowed unsecured claims of every nature held by creditors of Debtor, including, but not limited to, claims arising out of the rejection of executory contracts, trade debt or any professional employed by Debtor prior to the Petition Date.

C. <u>CLASSIFICATION OF CLAIMS, INTEREST, AND TREATMENT</u>

<u>Administrative Claims</u>. The administrative claims are delineated as follows:

16

1. Law Offices of David W. Brown, PLLC, the attorneys for the Debtor, will have an administrative claim approximating $15,000.00, subject to Court approval.

2. The United States Trustee's Office will have an administrative claim for any unpaid fees due and owing through the course of administration. The Reorganized Debtor is obligated to pay quarterly fees to the United States Trustee until the Chapter 11 case has been converted, dismissed, or closed by the Court, pursuant to 28 U.S.C. Sec. 1930(a)(6).

The administrative claims shall be paid pursuant to the Bankruptcy Code, that is, within ten (10) days of confirmation, unless the administrative claimants agree to differing treatment with the Debtor. Upon the failure of the Reorganized Debtor to make any payment due on an administrative claims, which is not cured within ten (10) days of the mailing of a written notice of default by the creditor, such creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief in this Court (including, without limitation, this Court issuing a writ incident to any Order awarding fees and/or expense). Further, Debtor shall be required to file with the Court and serve upon the U.S. Trustee, post-confirmation, monthly receipt and disbursement reports, until such time as the case is closed.

Allowed Priority Claims

The Internal Revenue Service shall be afforded a priority tax claim of $116,902.79, subject to the claim objection process. This relates to previous tax years. The allowed priority claim of the Internal Revenue Service shall be paid over 5 years, accruing interest at the rate of

six percent (6%) per annum from the Effective Date until paid in full.  Payments shall be applied by the Internal Revenue Service against the earliest date of assessment.  Payments shall begin in the month immediately after the Effective Date.  Payments shall be made in equal monthly payments of $1,948.38 on or before the 15th day of each month.

The State of Michigan shall be afforded a secured claim of $41,714.77, and a priority tax claim of $20,877.74, subject to the claim objection process.  This relates to previous tax years. The allowed priority claim of the Internal Revenue Service shall be paid over 5 years, accruing interest at the rate of six percent (6%) per annum from the Effective Date until paid in full. Payments shall be applied by the Internal Revenue Service against the earliest date of assessment.  Payments shall begin in the month immediately after the Effective Date.  Payments shall be made in equal monthly payments of $750.00 as to the secured claim and $375.00 as to the priority claim equaling a total of $1125.00 per month on or before the 15th day of each month.

Voting Class I— Allowed General Unsecured Claims.

This class consists of all other allowed unsecured claims of every nature held by creditors of the Debtor, as set forth in the schedules, claims register, and also on **Exhibit B**.  Total payment amount by creditor and monthly payment amounts are attached as **Exhibit B.**

The Reorganized Debtor may file an objection to any Proof of Claim or un-filed Claim. A Creditor possessing an Allowed General Unsecured Claim shall receive a total distribution of twenty-five (25%) of its Allowed General Unsecured Claim.  Debtor shall pay $949.67 each month toward Allowed General Unsecured Claims on a pro-rata basis.  Payments shall begin in the month immediately after the Effective Date.  Payments shall be made in equal monthly payments of $949.67 on or before the 15th day of each month.

Any creditor receiving twenty-five (25%) of its Allowed General Unsecured Claim shall receive no further distribution. Based on the figures listed on **Exhibit B**, it is presumed that payments shall conclude in approximately sixty (60) months from the Effective Date. **This class shall be impaired.**

<u>ARTICLE IV EXECUTORY CONTRACTS</u>

All executory contracts and unexpired leases, not previously assumed, as noted in the Schedules, are hereby rejected. Parties to any rejected executory contracts shall have fifteen (15) days after the Confirmation Date in which to file their claims for damages resulting from the rejection. Allowed claims from this group and claims that the Court has allowed over the objections of the Debtor shall become part of **Voting Class I**. In the event any such Claim is not filed timely, the untimely Claim shall be disallowed in its entirety. The Reorganized Debtor may file an objection to any Proof of Claim.

<u>ARTICLE V RETENTION OF JURISDICTION</u>

The Court shall retain jurisdiction of the case until the Plan has been fully consummated for the purposes set forth below:

a. To allow and disallow claims not allowed or disallowed prior to confirmation.

b. To hear and determine any controversy pending as of the date of confirmation before this Court and for the purpose of granting any Injunction or any other relief (including damage awards) as may be necessary or desirable to effectuate the purposes of the Plan.

c. To estimate claims pursuant to 11 U.S.C. Sec. 502(c), enter final order on objections to claims and to determine the validity, priority, or extent of a lien or other interest in property under F.R. Bankr. P. 7001.

19

d. If requested by any interested party, to enter Orders allowing compensation to persons so entitled to received compensation pursuant to the Bankruptcy Code.

e. To modify the Plan pursuant to 11 U.S.C. Sec. 1127.

f. For such other matters as may be set forth in the Order of Confirmation.

g. In the event an appeal is perfected from the Order Confirming Plan, to enter such Orders regarding the disbursement of funds under the Plan or other matters as may be necessary to protect the interests of the Reorganized Debtor and its creditors.

h. The classification of the claim of any creditor and the re-examination of the claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to a creditor's Claim. The failure of the Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed a waiver of the Debtor's right to object to or re-examine the Claim in whole or in part.

i. The determination or allowance of compensation to those persons so entitled to receive compensation for services rendered prior to the Confirmation Date pursuant to the Bankruptcy Code.

j. The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, claims, controversies, disputes, or conflicts, whether or not subject to an action pending as of the Confirmation Date, between the Debtor and any other party.

k. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the order of confirmation as may be necessary to carry out the purposes and intent of the Plan.

l. The enforcement and interpretation of the terms and conditions of the Plan.

m. The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, and any creditor.

n. Determination of whether a default has occurred under this Plan, and the making of such orders as the Bankruptcy Court deems necessary to enforce the provisions of this Plan, including, but not limited to, ordering a modification of the Plan, and ordering the conversion of this Chapter 11 proceeding to a Chapter 7 proceeding.

o. To hear and determine controversies brought under Chapter 5 of the Bankruptcy Code, including preference and fraudulent conveyances, and such claims arising pre-petition/pre-confirmation of which Debtor has retained standing post-confirmation.

p. To hear any adversary proceedings pursued under F.R. Bankr. P. 7001(1)-(10).

q. To enter a final decree closing the Case.

ARTICLE VI VESTING OF PROPERTY

Except to the extent provided in the Plan or in the Order of Court confirming the Plan, upon the Confirmation Date, Debtor shall be discharged and released from (i) any and all debts arising or incurred prior to the Confirmation Date, and (ii) any and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Code.

Except to the extent provided in the Plan, upon Confirmation Date, Debtor shall be vested with title to all property of the estate and all claims or causes of actions arising under the Code in favor of Debtor.

Debtor reserves the right to institute litigation (or pursue rights in an administrative proceeding) for claims arising pre-petition/pre-confirmation. Any aforementioned claims set forth by Debtor should not be construed to limit any other potential causes of action arising pre-petition/pre-

confirmation which Debtor may bring post-confirmation against any other party. Debtor is currently not engaged as a Plaintiff in any active litigation.

ARTICLE VII MODIFICATION OF PLAN

Modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that such Plan, as modified, meets the requirements of 11 U.S.C. Sec. 1122 and 11 U.S.C. Sec. 1123 and the Debtor shall have complied with 11 U.S.C. Sec. 1125.

Debtor may modify the Plan at any time after confirmation and before its substantial consummation, provided that such Plan, as modified, meets the requirements of 11 U.S.C. Sec 1122 and 11 U.S.C. Sec. 1123 and the Court, after notice and a hearing, confirms such Plan as modified, under 11 U.S.C. Sec 1129, and the circumstances warrant such modification.

A holder of a claim or interest that has accepted or rejected the Plan, shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

ARTICLE VIII EFFECTIVE DATE OF THE PLAN

a. This Plan shall be effective on the eleventh (11th) day after the date of the Order Confirming the Plan; provided, however, that no stay pending appeal of the Order of Confirmation has been granted. In the event such an appeal is filed and stay granted, this Plan shall be effective as of the date the Order of Confirmation becomes final and binding on all parties. Should an appeal be taken in this case, Debtor shall be required to seek a stay pending appeal.

b. Confirmation of the Plan will make the Plan binding upon the Debtor, creditors, and other parties in interest, regardless of whether they have accepted the Plan. Such

creditors will be prohibited from receiving payment from or seeking recourse against the Debtor except as expressly provided in the Plan or the confirmation order. In addition, confirmation of the Plan will enjoin such parties from pursuing any claim, liability, interest, or right that arose prior to the Confirmation Date. Confirmation of the Plan will also operate as a discharge of all claims against and interests as set forth in 11 U.S.C. sec. 1141(d), except as otherwise provided in the Plan.

## ARTICLE IX COSTS AND EXPENSES INCURRED AND UNPAID OBLIGATIONS OF THE DEBTOR IN POSSESSION

The Debtor and Reorganized Debtor shall pay (and be obligated for) all the costs and expenses of the Reorganization as allowed by the Court upon entry of the appropriate Order so allowing said costs and expenses.

## ARTICLE X UNITED STATES TRUSTEE FEES

All United States Trustee fees due at the time of confirmation of this Plan shall be paid within ten (10) days of confirmation. As such, Debtor shall pay to the United States Trustee the appropriate sums required pursuant to 28 U.S.C. Sec. 1930(a)(6). After confirmation, and until the Case is closed by the Court, Debtor and Reorganized Debtor shall pay all post-confirmation fees on all disbursements of the Debtor and Reorganized Debtor, and shall follow all procedures of the United States Trustee for reporting and tracking such disbursements.

## ARTICLE XI MEANS FOR EXECUTION OF PLAN

The Debtor shall generate the funds necessary for the execution of this Plan through the earnings of the Reorganized Debtor.

## ARTICLE XII REMEDIES AND RIGHTS

Upon the failure of the Debtor to make any payment due on a secured claim which is not cured within thirty (30) days of the mailing of a written notice of default to the creditor, such creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim and/or seek relief in this Court.

Moreover, in the event of conversion of this Case to a Chapter 7 proceeding all property of the Debtor, Debtor-in-Possession, or Reorganized Debtor pursuant to Confirmation of the Plan of Reorganization and all property acquired by the Reorganized Debtor subsequent to Plan confirmation shall be property of the Chapter 7 Estate.

## ARTICLE XIII RESERVATION OF CLAIM OBJECTION RIGHTS

Debtor herein reserves the right to object to any filed claim for a period of sixty (60) days from the date the Order Confirming Plan of Reorganization is entered.

## ARTICLE XIV MANDATORY RETIREE PROVISION

Debtor has no retiree benefit plans which must comport with 11 U.S.C. Sec. 1129(13).

## ARTICLE XV

a. In the event the holder of any Claim shall transfer such Claim after the Confirmation Date, it shall immediately advise the Debtor and Debtor's Counsel, in writing, of such transfer and the aforementioned parties shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until it shall have received written notice of such transfer. Each transferee of any claim shall take such claim subject to the provisions of the Plan and any requests made, waiver, or consent given or other action taken hereunder and, except as otherwise provided in the notice; the Debtor

shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

b.  The rights and obligations of any entity or person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, successors and assigns of such entity or person.

c.  The making and delivery of any instruments of transfer to or from the Debtor pursuant to this Plan, including deeds and articles of transfer shall not be taxed under any law imposing a stamp, as provided in 11 U.S.C. Sec.1146©.

d.  Any services performed or expenses incurred by any professional on behalf of the Reorganized Debtor with respect to this Case or the Reorganized Debtor after the Confirmation Date, shall not be subject to the prior review and approval of the Court. After the Confirmation Date, no professional shall be required to disclose payments from the Reorganized Debtor to the Court or the United States Trustee. All fees and expenses arising after the Confirmation Date shall be billed directly to the Reorganized Debtor.

e.  Neither the Debtor, nor the Reorganized Debtor, is prohibited from leasing or purchasing real or personal property.

f.  A Claim is classified in a particular class only to the extent that the Claim qualifies within the description of the class and is classified in a different class to the extent the Claim qualifies within the description of that different class. If a Claim is acquired or transferred, the Claim will be placed in the class in which it would have been placed if it were owned or held by the original claimant or holder.

g. Except to the extent that the United States Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan.

h. Unless otherwise instructed in writing, Notices to the Reorganized Debtor under this Plan shall be mailed to:

Counsel for the Reorganized Debtor: Law Offices of David W. Brown, PLLC
Attn.: David W. Brown
1820 N. Lapeer Road, Suite 2A
Lapeer, MI 48446

Reorganized Debtor:                 Blessed USA, Inc.


Proposed and Prepared By:           Prepared By:

Blessed USA, Inc.                   Law Offices of David W. Brown, PLLC

/s/ Stanley Kalisek                 /s/ David W. Brown P58113
President Blessed USA, Inc.         Counsel for Debtor
                                    1820 N. Lapeer Road Suite 2A
                                    Lapeer, MI 48446
                                    (810) 245-6082
                                    dbrownatt@sbcglobal.net

**LIQUIDATION ANALYSIS**

| Property | Value | Liens | Exemptions | Non-Exempt |
|---|---|---|---|---|
| Bank Accounts | $140.00 | $0 | $0 | $140.00 |
| Accounts Receivable | $20,000.00 | $0 | $0 | $20,000.00 |
| Motor vehicles | $4,000.00 | $0 | $0 | $4,000.00 |
| Office Equipment | $10,000.00 | $0 | $0 | $10,000.00 |
| Inventory | $10,000.00 | $0 | $0 | $10,000.00 |
| Totals | $2,232.580 | $0 | $0 | $44,140.00 |

Amount Creditors would receive if case were a Chapter 7 Bankruptcy: $44,140.00

II.   Proceeds of Assets (before deducting amount of secured claims)   $44,140.00

III.  Claims

    (a) Secured Claims      Est.Totals

         $0.00

    (b) Administrative Expenses
         United States Trustee's Fees    $1,000.00
         Debtor's Attorney    $15,000.00
         Debtor's Financial Advisors and Accountants    $1,000.00

    (c) Pre-Petition Unsecured Priority Claims
         Internal Revenue Service (disputed)    $116,902.79
         State of Michigan    $41,714.77

    (d) Total Secured, Administrative and Pre-Petition
         Priority Claims    $175,617.56

IV      Distribution of Proceeds of
        Assets in the Event of Liquidation

        (a) Gross Proceeds Available from
            Liquidation of Assets                                    $44,140.00

        (b) Less total of :

            Secured Claims              $0.00
            Administrative Expenses     $17,000.00
            Pre-Petition Unsecured
                Priority Claims (disputed)   $158,617.56

                Total                                               $175,617.56

        (c) Net Proceeds

        Proceeds Available to Pre-Petition Unsecured
        Creditors (including deficiency claims)                      $0.00

        (d) % Available to Pre-Petition Unsecured Creditors          0%

        (e) Proceeds Available for Equity Interests                  $0.00

Based upon the liquidation Analysis set forth above, the Debtor believes that a liquidation
would result in a substantially smaller distribution to every class of its creditors than the
proposed treatment set forth in this Plan.

**EXHIBIT B**

**LIST OF GENERAL UNSECURED CLAIMS, AMOUNTS OWED, AND PAYMENT**

**AMOUNTS**

| Creditor | Amount Owed | Monthly Payment |
|---|---|---|
| Davis and Goldmark, Inc. | $2670.00 | $11.13 |
| Comdata Network, Inc. | $11,512.80 | $47.97 |
| Creston Electronics, Inc. | $22,811.89 | $95.05 |
| NITEK | $6,126.00 | $25.52 |
| Aerotek, Inc. | $60,591.25 | $252.46 |
| Ashly Audio, inc. | $5,746.32 | $29.94 |
| Kramer | $6,493.56 | $27.06 |
| Western Surety Company | $54,322.29 | $226.34 |
| Consumers Energy Company | $2,466.54 | $10.27 |
| Waste Management | $1,468.66 | $6.12 |
| Jenne Distributors, Inc. | $3,762.30 | $15.68 |
| Internal Revenue Service | $46,664.65 | $194.44 |
| State of Michigan | $3,285.43 | $13.69 |
| Totals | $227,921.87 | $949.67 |

**EXHIBIT C**

**FINANCIALS**

**Income Statements**

2011
| | |
|---|---|
| Gross Revenue | $1,933,079.00 |
| Operating Expenses | $1,949,207.00 |
| Operating Loss | ($16,128.00) |

2012
| | |
|---|---|
| Gross Revenue | $1,187,959.00 |
| Operating Expenses | $1,495,796.00 |
| Net Income | $(307,837.00) |

2013
| | |
|---|---|
| Gross Revenue | $8,382.50 |
| Operating Expenses | $10,089.40 |
| Net income | $(1,706.90) |

**Balance Sheets**
2011
| | |
|---|---|
| Total Current Assets | $1500.00 |
| Total Long-Term Assets | $25,990.00 |
| Total Intangible Assets | $0.00 |
| Total Assets | $27,490.00 |
| Total Liabilities | $968,872.00 |

2012
| | |
|---|---|
| Total Current Assets | $150.00 |
| Total Long-Term Assets | $25,990.00 |
| Total Intangible Assets | $0.00 |
| Total Assets | $26140.00 |
| Total Liabilities | $640,000.00 |

<u>**EXHIBIT D**</u>

<u>**INCOME FORECAST THRU 2019**</u>

| <u>Year</u> | <u>Revenue</u> | <u>Expenses</u> | <u>Net</u> | <u>Plan Payments</u> |
|------|---------|----------|-----|---------------|
| 2014 | $180,000 | $75,560 | $103,440 | $48,276.60 |
| 2015 | $216,000 | $82,680 | $133,320 | $48,276.60 |
| 2016 | $260,000 | $87,000 | $173,000 | $48,276.60 |
| 2017 | $312,000 | $89,000 | $223,000 | $48,276.60 |
| 2018 | $374,000 | $92,000 | $282,000 | $48,276.60 |

<u>**ASSUMPTIONS**</u>

These forecasts assume that the Debtor is able to successfully bid current projects. This increase is primarily shown in the differential between the 2014 and 2015 forecasts. An annual increase of approximately ten percent (10%) is included in the increase of annual sales. The expense numbers assume modest increases in cost of goods sold and utilities expenses.